UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 12-08-JBC

KNC INVESTMENTS, LLC,                                                      PLAINTIFF,

V.            MEMORANDUM OPINION AND ORDER

LANE'S END STALLIONS, INC.,                                                DEFENDANT.

\* \* \* \* \* \* \* \* \*

This matter is before the court on Lane's End's motion to dismiss (R. 5) and KNC's motion for discovery (R. 19). Because Counts I, II, and parts of Count IV of KNC's complaint are barred by the doctrine of *res judicata*, because KNC is not entitled, as a matter of law, to its requested declaratory judgment on Count III, and because the remaining parts of Count IV fail to state a claim on which relief may be granted, the court will grant Lane's End's motion and deny KNC's motion.

KNC is the Owner of a one-fortieth share in the Lemon Drop Kid Syndicate, a thoroughbred syndication arrangement for which Lane's End serves as Syndicate Manager. This is the second case before this court between these parties. In the previous case, No. 5:11-cv-00107-JBC, KNC requested multiple declaratory judgments regarding the duties of Lane's End as dictated by the Syndicate Agreement and asserted connected claims for various alleged breaches of fiduciary duties. In that action, having interpreted portions of the Syndicate Agreement, this court found in favor of Lane's End on all counts, variously dismissing portions of KNC's complaint and granting summary judgment to Lane's End on others where

appropriate. Judgment in that action was issued on November 11, 2011; the court then denied a motion to reconsider the judgment on February 9, 2012, and KNC's appeal, currently pending, was filed on February 23.

KNC filed the current action, through different counsel, on January 17, 2012. In the current action, KNC asserts further claims for declaratory judgment and injunction based on its interpretation of the Syndicate Agreement and alleges further breaches of fiduciary duties. Specifically, KNC seeks in Count I a declaratory judgment that Lane's End is required to segregate syndicate funds and business dealings; in Count II, an injunction to stop Lane's End from commingling LDK Syndicate funds with funds from other stallion syndicates it manages; in Count III, a declaratory judgment regarding Owners' priority for excess book Nominations, which arises out of events allegedly occurring in November 2011; and in Count IV, damages for various breaches of the duties alleged in Counts I, II, and III.

The claims in KNC's complaint that require the court to interpret the Syndicate Agreement and arise out of conduct that had either occurred before the previous lawsuit was filed or was ongoing at that time are barred by *res judicata*. This includes the entirety of the claims in Counts I and II, which assert that Lane's End should be required, per the terms of the Syndicate Agreement, to segregate LDK Syndicate funds and business dealings from those of the other Syndicates it manages, as well as breaches of fiduciary duty alleged in Count IV stemming from the allegations in Counts I and II. "A final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (emphasis in original). *Res judicata*, specifically claim preclusion, applies in this case because: (1) this court, in the previous action, reached a decision on the merits; (2) this action is between the same two parties as the previous action; (3) the allegations in Counts I and II of the complaint, as well as the allegations of breach of fiduciary duty with regard to the allegations in Count I and II, occurred or were occurring prior to the previous action and should have been litigated in the prior action; and (4) there is thus an identity of the causes of action as those claims require the court to interpret the Syndicate Agreement, as it did in the previous action, and do not allege new violations based on conduct occurring after the previous suit. *See Id*. Counts I and II, and the parts of Count IV that assert claims arising from Counts I and II, of KNC's current action seek declaratory judgment, an injunction, and damages based on its interpretation of the Syndicate Agreement, which the court extensively interpreted in the previous action. These claims, which do not arise out of conduct that began after the previous suit, *see Id*. at 529, could have been brought in the previous action. KNC's conflicts with Lane's End regarding separation of accounts and commingling of funds were ongoing before the previous action and were referenced in pleadings filed in the previous action as support for KNC's asserted claims. KNC may not now supplement its prior claims by filing such claims in a new action.

Furthermore, the "well-settled rule that an action for declaratory relief does

not have preclusive effect in a subsequent litigation between the same parties," *see Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 304 (6th Cir. 2011), does not apply in this circumstance; that rule, as applied and as presented in RESTATEMENT (SECOND) OF JUDGMENT § 33, cmt. 3 (1982), prevents *res judicata* from applying where a "plaintiff who wins declaratory judgment may go on to seek further relief . . . ." *Id*. The point of this rule is to allow a plaintiff who obtains a declaratory judgment on a claim to proceed with a claim for damages or other relief based on the same set of facts, either within the same action or in a new action. *See, e.g., Ventas*, 647 F.3d at 304; *Holbrook v. Shelter Ins. Co.*, 186 Fed. App'x. 618, 622 (6th Cir. 2006). It cannot reasonably be construed to create a loophole to the doctrine of *res judicata* by permitting a plaintiff to bring multiple lawsuits based on the same set of transactions or occurrences by couching them as separate actions for declaratory judgments. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 33, cmt. d (1982). The court will therefore grant Lane's End's motion to dismiss these portions of the complaint because they are barred by the doctrine of *res judicata*.

      KNC's claims in Count III, which address the methods by which Lane's End allocates excess book nominations, also require the court to interpret the Syndicate Agreement, but they arise out of conduct by Lane's End that allegedly occurred in or around December 2011 when KNC requested to breed Lemon Drop Kid to five of his own mares and was refused by Lane's End on the ground that it had already sold the bonus Nominations. As this claim arises out of events that occurred after

4

the previous suit, *see Rawe*, 462 F.3d at 529, it is not barred by *res judicata*. KNC's request for a declaratory judgment on Count III and Lane's End's motion to dismiss that count require the court to interpret the terms of the Syndicate Agreement, and Lane's End's motion to dismiss that count is therefore treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).  Because the Syndicate Agreement entirely governs this aspect of the dispute, and because interpretation and determination of whether a contract is ambiguous are questions of law, *see Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003), the court need consider no evidence beyond the Agreement in determining whether Lane's End is entitled to summary judgment on Count III; further discovery, as requested by KNC, is therefore unwarranted.  KNC is not entitled to its requested declaratory judgment and Lane's End is entitled to summary judgment on Count III because the claims therein rely upon interpretations of the Syndicate Agreement that are contrary to its unambiguous terms.

    KNC asserts in Count III, pursuant to the Syndicate Agreement and Lane's End's general duties as an agent, that: (1) Lane's End is required to advise all Owners, prior to selling bonus Nominations in Lemon Drop Kid, of its intention to do so; (2) Lane's End is required to give Owners the first priority to purchase both book and bonus Nominations; (3) Lane's End is required to adopt a plan in consultation with all of the Owners as to the use and disposition of bonus Nominations; (4) this plan must allocate the bonus Nominations directly to the Owners when the excess nominations generate sales proceeds in excess of the

5

costs of maintaining the stallion; and (5) KNC has the right to purchase up to five breeding rights to Lemon Drop Kid at the advertised Stud Fee of $35,000 for its approved mares. These assertions arise out of a misapplication of agency rules and misinterpretation of the relevant portions of the Syndicate Agreement.

While Lane's End is an agent for the Owners, its obligations under that agency relationship are defined and limited by Syndicate Agreement. *See Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.*, 242 F.Supp.2d 438, 449 (W.D. Ky. 2003) (citing *Fulcrum Financial Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1012-13 (7th Cir. 2000); RESTATEMENT (SECOND) OF AGENCY § 376 (1958)). Thus, the court cannot layer general agency obligations, such as the duty to work strictly in the best interests of the principal, onto the Syndicate Agreement, *id.*, particularly in this arrangement, where Lane's End serves as agent to multiple principals, and where the Syndicate Agreement specifically provides that Lane's End must act against the interests of individual principals in certain situations. Therefore, in interpreting the Syndicate Agreement and the duties it imposes upon Lane's End, the language of the Syndicate Agreement itself controls without reference to implied duties of general agency arrangements.

The relevant provisions from the Syndicate Agreement are as follows:

> 3.1 <u>Nominations</u>. During the first five breeding seasons that LEMON DROP KID stands at stud, the Owner of each Fractional Interest shall be entitled to two Nominations . . . and during each breeding season thereafter the Owner of each Fractional Interest shall be entitled to one Nomination, in each case, subject to the provisions governing a reduced book.

6

> 3.3 <u>Normal Book</u>. For each breeding season, the Owner of each Fractional Interest shall be entitled to the Nominations provided in paragraph 3.1 . . . . All such Nominations are collectively called the "normal book". [. . .]
>
> 3.4 <u>Nomination</u>. A "Nomination" is the right to breed on Thoroughbred mare to LEMON DROP KID in a breeding season. [. . .]
>
> 3.7 <u>Excess Book</u>. Should the Syndicate Manager determine, after consultation and advice from the attending veterinarian, that LEMON DROP KID may be bred safely to mares in excess of the normal book, the Syndicate Manager shall determine the number of mares to which LEMON DROP KID may be bred. Each year after the first year that LEMON DROP KID shall stand at stud, the Syndicate Manager shall notify the Owners if nominations in an excess book for a breeding season are expected to be allocated to the Owners and the number of Nominations expected to be allocated. The Owners shall be entitled either to an allocation of bonus Nominations, which allocation shall be made by lot with one draw for each Nomination in a normal book, or to a pro rata share of the proceeds from the sale by the Syndicate Manager of bonus Nominations, as determined by the Syndicate Manager. The plan of the Syndicate Manager for the use or disposition of Nominations in an excess book shall be made in consultation with one or more of the Owners. The Syndicate Manager may at any time cancel or defer any portion of an excess book for any year in which the Syndicate Manager should determine such action to be in the best interests of LEMON DROP KID.
>
> 4.8 <u>Allocation of Monies</u>. [. . .] The Syndicate Manager shall allocate to the account of each Owner such Owner's proportionate share of (i) any receipts from the sale by the Syndicate Manager of Nominations on behalf of the Syndicate in a bonus book . . . .

R. 5-5 at 3-5, 7.

The assertions in Count III require the court to read ambiguities into the Syndicate Agreement that are not present on its face, to interpret the Syndicate Agreement in a manner that is directly contrary to its language, and to impose extra-contractual agency duties upon Lane's End. First, KNC asserts that Lane's End is required to advise all Owners of its intention to sell bonus Nominations in

7

Lemon Drop Kid prior to doing so, based on the language of § 3.7: "Each year . . . , the Syndicate Manager shall notify the Owners if nominations in an excess book for a breeding season are expected to be allocated to the Owners and the number of Nominations expected to be allocated."  While "if," as used in that sentence, could reasonably be interpreted to mean "whether" rather than as describing the outcome of a contingency, such an interpretation ignores the remainder of § 3.7, which gives the Syndicate Manager sole discretion, after conferring with one or more of the Owners, to determine whether bonus Nominations will be allocated to the Owners or sold with the proceeds distributed to the Owners pro rata.  The Syndicate Manager has no duty to inform all of the Owners that it is preparing to make a decision regarding disposition of bonus Nominations, as evidenced by the requirement in that same section that the Manager consult with "one or more," rather than all, of the Owners before making the decision.  This section of the Syndicate Agreement is properly interpreted to provide that, should the Syndicate Manager decide to allocate bonus Nominations to the Owners rather than selling them, it must inform all of the Owners.  The Syndicate Manager is required to notify the Owners only in the event that some action must be undertaken by the Owners; if the Manager instead decides to sell the bonus Nominations, it has no duty to inform the owners, but must merely account to the Owners for each pro rata share of the proceeds.

    KNC's assertions that Lane's End is required to give Owners the first priority to purchase both book and bonus Nominations, and that Lane's End is required to

adopt a plan in consultation with *all* of the Owners as to the use and disposition of bonus Nominations, attempt to impose general agency duties upon Lane's End that are inconsistent with the terms of the Syndicate Agreement. As to the former, the Syndicate Agreement in § 3.3 defines the entitlement of each Owner: exactly one Nomination per year. Any excess book is to be disposed of at the Manager's discretion, and the Syndicate Agreement imposes no duty, in the case that the Manager decides to sell bonus Nominations, to prefer the Owners in such circumstances; while such a duty of loyalty might be imposed in a general agency situation, it cannot be imposed in this limited agency situation on top of the duties provided in the Syndicate Agreement. The latter assertion, that Lane's End must consult with all Owners before adopting a plan for disposal of bonus Nominations, is likewise an attempt to override the clear "one or more of the Owners" language in § 3.7 with a general duty to consult with all owners.

    The remaining assertions in Count III, that the plan must allocate the bonus Nominations directly to the Owners when the excess nominations generate sales proceeds in excess of the costs of maintaining the stallion and that KNC has the right to purchase up to five breeding rights to Lemon Drop Kid at the advertised Stud Fee of $35,000 for its approved mares, cannot be traced to the Syndicate Agreement, as it contains no language that lends them support. Instead, they must be understood as extra-contractual duties KNC seeks to impose based on general agency principles. The limited nature of Lane's End's agency does not permit such extra-contractual duties to be added to those found in the Syndicate Agreement.

9

The Syndicate Agreement's unambiguous terms provide that Lane's End is entitled to judgment on Count III as a matter of law. *See* FED. R. CIV. P. 56(a). Furthermore, because KNC is not entitled to a declaratory judgment on its claims in Count III, its claims in Count IV, for breach of fiduciary duties that do not exist with regard to disposal of bonus Nominations under the Syndicate Agreement, must be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Because there are no viable and genuine disputes of material fact in this action, the court will deny KNC's motion for pre-trial discovery.

Finally, because the court is sufficiently advised by the parties' briefs, it will deny Lane's End's motion for a hearing.

Accordingly,

**IT IS ORDERED** that Lane's End's motion to dismiss (R. 5) is **GRANTED**.

**IT IS FURTHER ORDERED** that KNC's motion for discovery (R. 19) is **DENIED**.

**IT IS FURTHER ORDERED** that Lane's End's motion for a hearing (R. 7) is **DENIED**.

The clerk shall **CLOSE** and **STRIKE** this matter from the active docket.

A separate judgment will issue.

Signed on May 17, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY